IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Sharon Grant Coakley, | ) | Civil Action No. 8:15-cv-2788-MGL-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On April 23, 2012, Plaintiff filed applications for DIB and SSI, alleging disability beginning April 1, 2009. [R. 164–73.]  The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R. 110–25.] Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on November 19, 2013, ALJ Richard L. Vogel conducted a hearing on Plaintiff's claims.  [R. 29–45.]  At the hearing, Plaintiff amended her alleged onset date to January 1, 2012. [R. 15, 33.]

On February 14, 2014, the ALJ issued his decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act ("the Act"), from January 1, 2012, through the date of the decision.  [R. 15.]  At Step 1[3], the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since January 1, 2012, the amended alleged onset date.  [R. 17, Findings 1 & 2.]  At Step 2, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis/degenerative disc disease, hypertension, and substance abuse disorder.  [R. 17, Finding 3.]  At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. [R. 18, Finding 4.]  The ALJ specifically considered Listings 1.00, 2.00, 4.00, 9.00, 12.00, 12.04 and 12.09.  [*See Id.*] Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> . . . the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

[R. 19, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was able to perform her past relevant work as a cook.  [R. 23, Finding 6.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 1, 2009[4], through the date of the decision.  [R. 23–24, Finding 7.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council which denied review on May 12, 2015.  [R. 1–11.]  Plaintiff commenced an action for judicial review in this Court on July 15, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal errors warranting the reversal and remand of the case.  [*See* Docs. 18, 20.]  Specifically, Plaintiff contends the ALJ:

1.   Erred by failing to find that Plaintiff's chronic obstructive pulmonary disease ("COPD") and right shoulder supraspinatus tear constituted severe impairments;

2.   Erred in determining Plaintiff's residual functional capacity;

3.   Erred by failing to comply with Social Security regulations and rulings that required him to consider and address the evidence of record relating to Plaintiff's COPD and right shoulder supraspinatus tear; and

4.   Erred by failing to comply with Social Security rulings related to the assessment of Plaintiff's past relevant work.

_____

[4]In the ALJ's decision, at one point he found Plaintiff had not been under a disability from April 1, 2009, through the date of the decision, and at another point he found that Plaintiff had not been under a disability from January 1, 2012, through the date of the decision. [*Compare* R. 15 *with* R. 23.]

3

[*See Id*.]

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act. [*See* Doc. 19.]  Specifically, the Commissioner contends:

1. Substantial evidence supports the ALJ's step two finding that COPD and right shoulder impairments were not severe; and even if there was error, it is harmless because the ALJ considered those problems during the RFC determination;

2. Substantial evidence supports the ALJ's finding that Plaintiff could return to her past relevant work as a cook; and

3. The ALJ properly did not proceed to Step 5 because he found Plaintiff was not disabled at Step 4.

[*Id*.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

5

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

9

**B.**     ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

---

is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where

a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also*

14

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Impairment Related to Right Shoulder Supraspinatus Tear**

Plaintiff challenges the ALJ's decision that she could perform gainful employment on the ground that the ALJ failed to sufficiently consider and analyze her impairment of the right shoulder supraspinatus tear. Plaintiff argues that the ALJ should have found it to be a severe impairment at Step 2 and also should have factored it into her RFC. This Court agrees that the ALJ did not sufficiently discuss Plaintiff's alleged impairment of the right shoulder supraspinatus tear at Step 2 or beyond, and that the error was not harmless.

### *Hearing Testimony*

Plaintiff testified that she had worked for more than 15 years at Bertha's Kitchen in Charleston, South Carolina, as a cook. [R. 34.] She stated that as a routine part of her job she was required to sometimes lift up to 50 pounds (such as rice, flour, sugar). [*Id*.] And, when questioning Plaintiff about physical issues that caused her pain, her attorney asked Plaintiff if she recalled having an MRI on her right shoulder. [R. 35.] She answered that she recalled having an MRI for her shoulders; she believed it was damaged due to having so many injections in her shoulders, that she needed a replacement, but she did not have insurance at that time to pay for a shoulder joint replacement. [*Id*.] She believed that one of her shoulders was "torn or something." [R. 35–36.] Her attorney asked if Plaintiff would get it fixed now that she has Medicaid; Plaintiff responded that yes she would get her shoulder fixed if she could but "right now my doctor wants to concentrating on the aneurysm I just had." [R. 36.]

***Pertinent Medical Evidence Related to Shoulder Tear***

On August 6, 2012, during Plaintiff's office visit at MUSC Health on follow up after her recent visit to ER Nason Medical Center for COPD exacerbation, Dr. Donald Fox ("Dr. Fox") examined Plaintiff. [R. 384–88.] He noted that she was interested in getting her health on track; she had just been enrolled in Medicaid. [R. 384.] Part of what she requested treatment for was her chronic left hip and bilateral shoulder pain. [*Id*.] However, due to her blood pressure elevation, that took priority for this visit. [*Id*.] On examination, it was noted Plaintiff exhibited decreased range of motion, bony tenderness and pain in her right shoulder. [R. 385.] In her left shoulder, she exhibited decreased range of motion, tenderness and pain. [*Id*.] Dr. Fox noted about shoulder pain, "MRI of right shoulder demonstrates supraspinatus tear, patient has had steroid injections in both shoulders as well with significant relief.  She may need an orthopedic consult or physical therapy.  She is currently taking tramadol for pain that she states does not relieve the pain." [*Id*.]

***ALJ's Determinations Related to Right Shoulder Supraspinatus Tear***

As noted above, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis/degenerative disc disease, hypertension, and substance abuse disorder.  At Step 2, the ALJ discussed Plaintiff's alleged impairments of COPD, diabetes mellitus, and status post aneurysm; he found each of those impairments to be non-severe. [R. 17–18.]

During the RFC determination, the ALJ noted that "although [Plaintiff] has reported shoulder and neck pain intermittently, she has received minimal treatment for both, has not consistently reported pain in these areas, and her cervical spine x-rays were unremarkable." [R. 22.]  And, when determining to give little weight to the opinions of state agency medical consultants about limited left overhead reaching ability, the ALJ stated that

19

the limitation was not corroborated by the medical evidence of record and Plaintiff had only testified to trouble reaching with her right arm. [R. 23.] As such, the ALJ determined Plaintiff could perform the full range of medium work with no additional limitations as to reaching overhead or lifting her arms. [R. 19–23.]

### *Discussion*

At Step 2, the ALJ has the responsibility to determine which impairments a plaintiff has and whether the impairments are severe or non-severe. *See Solesbee v. Astrue*, C/A No. 2:10-1882-RMG, 2011 WL 5101531, at *4–5 (D.S.C. Oct. 25, 2011) (finding error when the ALJ did not address at Step 2 a diagnosis of Panic Disorder With Agoraphobia and its potential impact on the plaintiff's ability to perform work). The ALJ's determination of whether or not an impairment is severe is a threshold determination. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). "[S]evere" is a term of art, which means the impairment at issue "significantly limits [the Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Social Security Ruling ("SSR") 96–8p contemplates that a "severe" impairment "has more than a minimal effect on the ability to do basic work activities." SSR 96–8p. Plaintiff bears the burden of proving an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987).

During the hearing before the ALJ, Plaintiff specifically contended that she had physical limitations related to her right shoulder that kept her from being able to lift much weight. And, Plaintiff referred the ALJ to apparent medical evidence of an MRI that showed a right shoulder supraspinatus tear. However, the ALJ did not acknowledge Plaintiff's alleged shoulder complaints during the Step 2 discussion. This was error. The Court cannot determine whether the ALJ actually considered the right shoulder

supraspinatus tear and dismissed it as non-severe or was simply not aware of the medical evidence concerning this impairment when issuing the decision.  *See Cox v. Colvin*, C/A No. 4:13-1979-TER (D.S.C. Sept. 17, 2014), 2014 WL 4656385, at * 13–14 (explaining that the ALJ's failure to mention several of Plaintiff's claimed impairments in his Step 2 discussion and subsequent failure to consider them in the RFC determination required a remand for full discussion of each of Plaintiff's complaints).

While it is true that an error at Step 2 in failing to consider whether a complaint is a severe or non-severe impairment may be harmless where the ALJ discusses the evidence and limitations related to that impairment during the RFC determination, that is not the case here.  *See Gibeau v. Astrue*, C/A No. 3:10-802-RMG-JRM (D.S.C. Jan. 11, 2012), 2012 WL 393408, at * 7, *adopted by*, 2012 WL 393429 (Feb. 6, 2012).  Although the ALJ briefly mentioned Plaintiff's alleged "shoulder pain" during the RFC discussion, he did not mention the medical evidence of a right shoulder supraspinatus tear.  Notably, because Plaintiff alleged arthritis and the ALJ did discuss that impairment, the Court does not know whether the ALJ thought the shoulder pain was related only to arthritis.

In the RFC discussion, the ALJ stated that the cervical spine x-rays were unremarkable which seems to relate to her alleged neck pain (that he grouped with her shoulder pain); and, he noted that Plaintiff "has received minimal treatment" for her shoulder pain.  The ALJ, however, did not mention that Plaintiff apparently did not have health insurance for some period of time and that she asserted she could not have the shoulder joint replacement, and the ALJ did not mention that Plaintiff testified that she would like to have the shoulder tear repaired but her doctor told her to concentrate on the aneurysm.  It appears the ALJ simply ignored the testimony and medical evidence related

21

to a right shoulder supraspinatus tear, or that he was not aware of the evidence of the right shoulder supraspinatus tear when issuing his decision.

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

When "determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental capacity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *McGuire v. Astrue*, C/A No. 5:07-254, 2008 WL 4446683, at *5 (S.D.W.Va. Sept. 26, 2008) (quoting *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir.1996)).  An RFC

22

assessment reflects an individual's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." S.S.R. 96–8p, at *2.  To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477.  And, this Court recognizes that the ALJ is not required to specifically refer to every piece of evidence in his decision, but the ALJ must provide a statement of the case setting forth a discussion of the evidence and explaining reasons upon which the determination is based.  *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014).

Here, the ALJ found that Plaintiff could perform the full range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c).  The definition of medium work requires that a person can lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  *See* 20 CFR §§ 404.1567(c) and 416.967(c).  Because the ALJ failed to consider—or, at least failed to articulate whether and how he considered—Plaintiff's alleged impairment of right shoulder supraspinatus tear throughout the sequential process, this Court cannot find the error is harmless because the definition of medium work requires the ability to lift 50 pounds.

In fact, the ALJ discounted two opinions of state agency medical consultants that stated Plaintiff was limited in her ability as to left overhead reaching because Plaintiff's reports of pain had not been corroborated by medical evidence. [R. 23.]  The Court notes that on October 17, 2012, Dr. Angela Saito stated that Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. [R. 76.]  And, on February 26, 2013, Dr. Cleve Hutson placed the same restrictions on Plaintiff's RFC. [R. 104.]  However,

23

as noted, the ALJ did not consider, or was not aware of, the medical evidence of the right shoulder supraspinatus tear.  If the ALJ had discussed this evidence, he may have determined that Plaintiff's complaints of being unable to lift, carry, or reach overhead were corroborated by medical evidence.  And, the RFC determination may have included a limitation that accounted for Plaintiff's right shoulder supraspinatus tear.[9]

Accordingly, this Court cannot say whether substantial evidence supports the Commissioner's decision.  And, the matter should be remanded for full discussion by the ALJ of each of Plaintiff's impairments in combination throughout the sequential evaluation process.  *See Aurand v. Astrue*, C/A No. 6:07-3968-HMH-WMC, 2009 WL 364389, at *3 (D.S.C. Feb. 12, 2009) (remanding for several reasons, including the ALJ had not discussed one of plaintiff's claimed impairments).

**Remaining Allegations of Error**

The Court has determined that this case is subject to remand based on the ALJ's failure to sufficiently consider and discuss Plaintiff's right shoulder supraspinatus tear throughout the sequential evaluation process.  Upon remand, the ALJ is to take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is

---

[9]The Commissioner makes an issue that Plaintiff did not allege a right shoulder impairment on her disability benefit application. [*See* Doc. 19.] However, an ALJ is required to consider any impairments a Plaintiff places on the application "as well as any impairments about which he receives evidence."  *Nicholson v. Comm'r*, 600 F. Supp. 2d 740, 756 (N.D.W.Va. Feb. 27, 2009) (remanding case where the ALJ failed to discuss an impairment although it was not listed on the disability application).

REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.


November 29, 2016                              s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge